**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

---

OSCAR FLORES
717 Kennedy Street NW
Washington, DC  20011

CRISTINA ARROYO
717 Kennedy Street NW
Washington, DC  20011

       Plaintiffs, on behalf of
       themselves and all similarly
       situated individuals,

v.

BOBBY ATHANASAKIS
a/k/a HARALAMBOS ATHANASAKIS
2310 Twin Valley Lane
Silver Spring, MD  20906

EMMANUEL ATHANASAKIS
a/k/a EMANUEL ATHANASAKIS
a/k/a MANNY ATHANASAKIS
8107 Fenton Street
Silver Spring, MD

ELENI ATHANASAKIS
2310 Twin Valley Lane
Silver Spring, MD  20906

GEORGIA ATHANASAKIS
13209 Moonlight Trail Drive
Silver Spring, MD 20906

OLGA FRAGKIADAKIS
a/k/a OLGA ATHANASAKIS
16008 Narrows Terrace
Silver Spring, MD 20906

MANNY AND OLGA INC.
8107 Fenton Street
Silver Spring, MD

No. 1:13-cv-01565-ABJ

MANNY & OLGA'S PIZZA
SYSTEMS, INC.
13707 Northgate Drive
Silver Spring, MD  20902

3624 GEORGIA AVENUE, INC.
3624 Georgia Avenue NW
Washington, DC  20010

MANNY & OLGA'S
BETHESDA, INC.
8118 Woodmont Avenue
Bethesda, MD 20814

MANNY & OLGA'S PIZZA
WHEATON, INC.
12134 Georgia Avenue
Silver Spring, MD 20902

MANNY & OLGA'S PIZZA
ROCKVILLE, INC.
842-C Rockville Pike
Rockville, MD 20850

MANNY AND OLGAS
PIZZA H ST NE, INC.
3624 Georgia Avenue NW
Washington, DC 20010

TSURUNAKI LLC
3624 Georgia Avenue NW
Washington, DC 20010

PSILORITIS LLC
3624 Georgia Avenue NW
Washington, DC 20010

                    Defendants.

## PLAINTIFFS' SECOND AMENDED COMPLAINT

1.      Plaintiffs file this Second Amended Complaint as an attachment to plaintiffs' Motion for

Leave to File Amended Complaint, pursuant to LCvR 15.1. This pleading is timely filed

pursuant to the Court's April 3, 2014 Minute Order.

2.      Plaintiffs and similarly situated individuals were employees of various branches of a fast

food enterprise that does business as "Manny and Olga's" at approximately 10 locations in the

District of Columbia and Maryland.

3.      The individual defendants jointly own and operate the Manny & Olga's enterprise

through a number of corporate alter egos. Those corporate alter egos that are known to plaintiffs

as of the date of this filing have been named as defendants.

4.      Since the inception of the Manny and Olga's enterprise, defendants have engaged in a

pattern and practice of labor violations with regard to their in-store, non-management employees,

most of whom are Latino immigrants of limited means.

5.      Specifically, defendants have: (a) never paid any of their in-store, non-management

employees overtime;  and (b) paid their in-store, non-management employees below the

minimum wage. Up until 2012, all of defendants' in-store, non-management employees earned

approximately $4.00–6.00 per hour. After 2012, cook/cashiers were paid the minimum wage (but

still no overtime). However, delivery drivers continued to be paid $4.00–$6.00 per hour. These

practices continue to this day.

6.      Plaintiff Oscar Flores was a cook/cashier who worked for the defendants at 3 locations

over the last 3 years. He was paid approximately $6.00 per hour, then approximately $8.25 per

hour, for each of his approximately 63 weekly hours of work.

7.     Plaintiff Cristina Arroyo was a delivery driver who was paid approximately $4.00 per hour in wages for each of her approximately 65 weekly hours of work, plus a small "bonus" paid on a daily basis.

8.     Plaintiffs bring this action on behalf of themselves and all similarly situated individuals to recover damages for defendants' willful failure to pay overtime and/or minimum wages, in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and/or the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*

9.     Defendants propose two collective actions: (a) a FLSA collective action of all individuals who are working or who have worked at a "Manny & Olga's" restaurant as cooks, cashiers, and/or drivers since October 11, 2010; and (b) a DCMWA collective action of all individuals who are working or who have worked at a "Manny & Olga's" restaurant in the District of Columbia as  cooks, cashiers, and/or drivers since October 11, 2010.

## Jurisdiction and Venue

10.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because some defendants reside in this district, and a substantial part of the acts or omissions giving rise to plaintiffs' claims occurred in this district.

## Parties

12.     Plaintiffs are adult residents of the District of Columbia.

13.     Defendant Bobby Athanasakis (a/k/a Haralambos Athanasakis) is an adult resident of Maryland. Along with his father, Defendant Emmanuel Athanasakis, he is believed to be the head of the Manny & Olga's enterprise.

14.     On information and belief, Bobby Athanasakis is a direct or indirect owner of each of the corporate defendants.

15.     On information and belief, Bobby Athanasakis is an officer and/or director of each of the corporate defendants.

16.     Only some of defendants' branches operate under a valid business license. Of those that do, several are licensed under Bobby Athanasakis in his individual capacity. On information and belief, only one of defendants' branches operates under a valid business license that is in the name of a corporation.

17.     Bobby Athanasakis, through shell corporations, owns several of the buildings in which defendants' enterprise operates.

18.     Defendant Emmanuel Athanasakis (a/k/a Emanuel Athanasakis; a/k/a Manny Athanasakis) is an adult resident of Maryland. Along with his son, Defendant Bobby Athanasakis, he is believed to be the head of the Manny & Olga's enterprise.

19.     On information and belief, Emmanuel Athanasakis is a direct or indirect owner of each of the corporate defendants.

20.     On information and belief, Emmanuel Athanasakis is an officer and/or director of each of the corporate defendants.

21.     Only some of defendants' branches operate under a valid business license. Of those that do, several are licensed under Emmanuel Athanasakis in his individual capacity. On information and belief, only one of defendants' branches operates under a valid business license that is in the name of a corporation.

22.      Emmanuel Athanasakis owns several of the buildings in which defendants' enterprise operates. Emmanuel Athanasakis owns 3624 Georgia Avenue NW, which is in turn the business address of four of the corporate defendants.

23.      Defendant Eleni Athanasakis is an adult resident of Maryland. Along with the other individual defendants, she is part of the senior management of the Manny & Olga's Enterprise.

24.      On information and belief, Eleni Athanasakis is a direct or indirect owner of at least several of the corporate defendants.

25.      On information and belief, Eleni Athanasakis is an officer and/or director of at least several of the corporate defendants.

26.      Defendant Georgia Athanasakis is an adult resident of Maryland. Along with the other individual defendants, she is part of the senior management of the Manny & Olga's Enterprise.

27.      On information and belief, Georgia Athanasakis is a direct or indirect owner of at least several of the corporate defendants.

28.      On information and belief, Georgia Athanasakis is an officer and/or director of at least several of the corporate defendants.

29.      Georgia Athanasakis owns several of the buildings in which defendants' enterprise operates. Georgia Athanasakis owns 3624 Georgia Avenue NW, which is in turn the business address of four of the corporate defendants.

30.      Defendant Olga Fragkiadakis (a/k/a Eleni Athanasakis) is an adult resident of Maryland. Along with the other individual defendants, she is part of the senior management of the Manny & Olga's Enterprise.

31.      On information and belief, Eleni Athanasakis is a direct or indirect owner of at least several of the corporate defendants.

32.    On information and belief, Eleni Athanasakis is an officer and/or director of at least several of the corporate defendants.

33.    Defendant Manny and Olga Inc. is a Maryland corporation that regularly conducts business in Maryland and the District of Columbia. Its principal place of business is: 8107 Fenton Street; Silver Spring, MD. Its resident agent for service of process is defendants' counsel: Richard W. Lawlor, Esq.; 1688 E. Gude Drive, Suite 102; Rockville, MD 20850.

34.    Defendant Manny and Olga Inc. lost its corporate status between October 3, 2011 and July 9, 2012, and during that time operated as an unincorporated general partnership.

35.    Defendant Manny & Olga's Pizza Systems, Inc. is a Maryland corporation that regularly conducts business in Maryland and the District of Columbia. Its principal place of business is 13707 Northgate Drive; Silver Spring, MD 20902. Its resident agent for service of process is defendants' counsel: Richard W. Lawlor, Esq.; 1688 E. Gude Drive, Suite 102; Rockville, MD 20850.

36.    Defendant 3624 Georgia Avenue, Inc. is a District of Columbia corporation that regularly conducts business in Maryland and the District of Columbia. Its principal place of business is: 3624 Georgia Avenue NW; Washington, DC 20010. Its resident agent for service of process is: Defendant Emanuel Athanasakis; 1641 Wisconsin Avenue NW; Washington, DC  20007.

37.    Defendant Manny and Olga's Bethesda, Inc. is a Maryland corporation that regularly conducts business in Maryland and the District of Columbia. Its principal place of business is: 8118 Woodmont Avenue; Bethesda, MD 20814. Its resident agent for service of process is: Defendant Bobby Athanasakis; 2310 Twin Valley Lane; Silver Spring, MD 20906

38.    Defendant Manny and Olga's Pizza Wheaton, Inc. is a Maryland corporation that regularly conducts business in Maryland and the District of Columbia. Its principal place of

business is: 12134 Georgia Avenue; Silver Spring, MD 20902. Its resident agent for service of

process is: Defendant Bobby Athanasakis; 2310 Twin Valley Lane; Silver Spring, MD 20906.

39.     Defendant Manny and Olga's Pizza Rockville, Inc. is a Maryland corporation that

regularly conducts business in Maryland and the District of Columbia. Its principal place of

business is: 842-C Rockville Pike; Rockville, MD 20850. Its resident agent for service of process

is defendants' counsel: Richard W. Lawlor; 1688 East Gude Drive, Suite 102; Rockville, MD

20850.

40.     Defendant Manny and Olgas Pizza H St NE, Inc. is a District of Columbia corporation

that regularly conducts business in the District of Columbia. Its principal place of business is:

3624 Georgia Avenue NW; Washington, DC 20010. Its resident agent for service of process is:

Defendant Emmanuel Athanasakis; 3624 Georgia Avenue NW; Washington, DC 20010.

41.     Defendant Tsurunaki, LLC is a District of Columbia corporation that regularly conducts

business in the District of Columbia. It was incorporated on July, 11, 2012. Its principal place of

business is: 3624 Georgia Avenue NW; Washington, DC 20010. Its resident agent for service of

process is: Defendant Emmanuel Athanasakis; 3624 Georgia Avenue NW; Washington, DC

20010.

42.     Defendant Tsurunaki, LLC owns the building in which the one of defendants' branches is

located. Tsurunaki, LLC was created by some or all of the individual defendants exclusively for

the purpose of disguising and sheltering the real estate holdings of the Manny & Olga's

enterprise.

43.     Defendant Psiloritis, LLC is a District of Columbia corporation that regularly conducts

business in the District of Columbia. It was also incorporated on July, 11, 2012. Its principal

place of business is also: 3624 Georgia Avenue NW; Washington, DC 20010. Its resident agent

for service of process is also: Defendant Emmanuel Athanasakis; 3624 Georgia Avenue NW; Washington, DC 20010.

44.     Defendant Psiloritis, LLC owns the building in which the "Woodridge / Brookland" branch of Manny & Olga's is located. The building was purchased by Psiloritis, LLC on March 15, 2013.

45.     Defendant Psiloritis, LLC owns the building in which the one of defendants' branches is located. Psiloritis, LLC was created by some or all of the individual defendants exclusively for the purpose of disguising and sheltering the real estate holdings of the Manny & Olga's enterprise.

46.     The corporate defendants are alter egos that were set up for the express purpose of sheltering the Manny & Olga's enterprise from liability.

47.     On information and belief, the corporate defendants commingled funds and assets with each other and with the individual defendants.

48.     On information and belief, the individual defendants used the corporate defendants' funds for the individual defendants' purposes.

49.     The corporate defendants did not maintain arm's length relationships among themselves, or between themselves and the individual defendants. For example, the corporate and individual defendants shuffled material, personnel, and money throughout their enterprise without regard for which company "owned" a particular branch.

50.     The corporate defendants failed to observe corporate formalities, such as holding regular board meetings or keeping distinct corporate records.

51.     On information and belief, the corporate defendants all utilized the services of the same attorney — defendants' counsel in the present case, Richard Lawlor — to incorporate, and for their other legal needs.

52.     On information and belief, the corporate defendants are all effectively headquartered in the same one or two locations: 8107 Fenton Street and 3624 Georgia Avenue.

53.     The individual defendants undercapitalized many of the corporate defendants when they created them. At least several of the defendant corporations were created by the individual defendants expressly to move capital away from potential sources of liability. On information and belief, the individual defendants incorporated a number of new corporations during the spring and summer of 2012 in direct response to a wage and hour lawsuit that was filed around that time.

## Factual Allegations

54.     At all relevant times, defendants acted through unified operation and common control.

55.     At all relevant times, defendants collectively constituted an enterprise (within the meaning of the FLSA and the DCMWA) that does business as "Manny & Olga's."

56.     "Manny and Olga's" is a fast food restaurant and delivery service with approximately ten locations in the District of Columbia and Maryland.

57.     At all relevant times, defendants' enterprise had more than two employees, and had an annual gross volume of sales made or business done of $500,000.00.

58.     At all relevant times, the plaintiffs and similarly situated individuals were engaged in commerce or in the production of goods for commerce.

59.     At all relevant times, defendants centrally controlled the hours that plaintiffs and similarly situated individuals worked, the manner in which they were paid, and the conditions of their employment.

60.     At all relevant times, defendants paid plaintiffs and similarly situated individuals through a centralized payroll system.

61.     At all relevant times, defendants had the power to hire and fire the plaintiffs and similarly situated individuals.

62.     At all relevant times, defendants "employed" the plaintiffs and similarly situated individuals within the meaning of the FLSA and the DCMWA.

63.     At all relevant times, defendants were joint employers of plaintiffs and other similarly situated individuals within the meaning of 29 C.F.R. § 791.2.

64.     At all relevant times, defendants did not maintain true and accurate records of each hour, day, and week worked by plaintiffs and similarly situated individuals, as required by 29 C.F.R. § 516 and D.C. Code § 32-1008 or Md. Code, Lab & Empl. Art., § 3-424.

65.     The exact amount of hours worked by and wages owed to plaintiffs and similarly situated individuals will only be known through discovery.

66.     At all relevant times, defendants were aware that they were legally required to pay plaintiffs and similarly situated individuals the applicable minimum wage — and one and one-half times the applicable minimum wage for all hours worked in excess of 40 hours in any one workweek.

67.     At all relevant times, the federal minimum wage was $7.25 — and the federal minimum wage for overtime hours was $10.38.

68.     At all relevant times, the District of Columbia minimum wage was $8.25 — and the District of Columbia minimum wage for overtime hours was $12.38.

**Plaintiff Oscar Flores**

69.     Plaintiff Oscar Flores worked for defendants at the following Manny & Olga's branches:

11

a)   "Park View / Petworth Park" location (3624 Georgia Avenue NW; Washington DC 20010);

b)   "14th Street" location (1841 14th Street NW; Washington DC 20009); and

c)   "H Street" location (1409 H St NE; Washington, DC 20002).

70.   Mr. Flores worked at these locations for approximately the following lengths of time, during approximately the following periods:

a)   "Park View / Petworth Park" location:  2 years and 2 months;  October 2010 — December 2012;

b)   "14th Street" location: 4 months;  January 2013 — April 2013; and

c)   "H Street" location: 3 months;  May 2013 — July 2013.

71.   When Mr. Flores worked at the "Park View / Petworth Park" location, he had several supervisors, but Bobby Athanasakis and Emmanuel Athanasakis were his "bosses." Bobby Athanasakis would come in several times a week and give orders to the employees. Both Bobby Athanasakis  and Mr. Flores' supervisors made it clear that restaurant policy was set by Bobby in consultation with the other individual defendants. In addition, Bobby was often the one that calculated the employees' pay and handed them their wages.

72.   In approximately December 2012, Bobby Athanasakis told Mr. Flores that the "14th Street" branch needed more cook/cashiers, and he transferred Mr. Flores to that location shortly thereafter.

73.   During Mr. Flores' time at the "14th Street" location, Bobby Athanasakis was at the restaurant almost every day, managing the employees. He was often the one that calculated their pay and handed them their wages.

74.     In April 2013, Bobby Athanasakis personally fired Mr. Flores from the "14th Street" location for forgetting to lock the back door when closing the restaurant. However, Bobby Athanasakis later called Mr. Flores and asked him to start working at the "H Street" location.

75.     During Mr. Flores's first few months at the "H Street" location, Bobby Athanasakis was there almost every day giving orders to the employees and supervisors.

76.     Throughout Mr. Flores's employment, Bobby Athanasakis's wife, Eleni Athanasakis, and Bobby Athanasakis's father, Emmanuel Athanasakis, would also occasionally come to the various Manny & Olga's restaurants and give the employees direct orders.

77.     At each of the Manny & Olga's locations at which Mr. Flores worked, there were three primary types of employees: supervisors, cook/cashiers, and drivers.

78.      Cook/cashiers were the non-management, in-store workers who did not deliver food. Their duties included preparing food, cleaning the restaurant, and various kinds of work associated with working in the kitchen of a restaurant. In addition, they were sometimes responsible for processing customer orders at the counter in the front of the restaurant.

79.      Drivers were the in-store employees who were sent out to make food deliveries. They were required to stay at the store and help with various tasks until a supervisor sent them out to make a round of food deliveries. After they made their deliveries, they came back to the restaurant and repeated the process.

80.     At each of the Manny & Olga's locations at which Mr. Flores worked, he was a cook/cashier.

81.     At each of the Manny & Olga's locations at which Mr. Flores worked, he typically worked approximately 60–66 hours a week. He worked approximately 10-11 hours per day for 4 out of the 5 days between Sunday and Thursday, and approximately 11–12 hours on both Friday

and Saturday. He usually had one day off a week, which would occur between Sunday and Thursday, although he sometimes worked 7 days in a week.

82.     At each of the Manny & Olga's locations at which Mr. Flores worked, all cook/cashiers worked the same typical schedule:  approximately 60–66 hours a week, approximately 10–11 hours per day for 4 out of the 5 days between Sunday and Thursday;  approximately 11–12 hours on both Friday and Saturday;  and one day off a week between Sunday and Thursday, although they sometimes worked 7 days in a week.

83.     At each of the Manny & Olga's locations at which Mr. Flores worked, all drivers worked the same schedule. Their daily schedule was slightly longer than that of the cook/cashiers, because they were often out finishing their deliveries after the kitchen had closed. They typically worked approximately 62–68 hours a week, approximately 10.5–11.5 hours per day for 4 out of the 5 days between Sunday and Thursday;  approximately 11.5–12.5 hours on both Friday and Saturday;  and one day off a week between Sunday and Thursday, although they sometimes worked 7 days in a week.

84.     On information and belief, cook/cashiers and drivers at all "Manny & Olga's" branches have similar schedules and work significant amounts of overtime.

85.     When Mr. Flores started working at the "Park View / Petworth Park" location, he was paid approximately $6.00 per hour for every hour he worked.  This amount was paid in cash, and he received no paystub.

86.     In approximately late-February 2012, while Mr. Flores was still working at the "Park View / Petworth" location, he started to be paid approximately $8.00–$9.00 per hour for every hour he worked, though he was not sure exactly how his pay was calculated. This amount was paid in a combination of check and cash. He started to receive paystubs occasionally, but these

paystubs varied dramatically  and drastically under-reported his pay. This rate and method of pay continued after he was transferred to the "14th Street" location, and later, to the "H Street" location.

87.     On information and belief, cook/cashiers and drivers at all "Manny & Olga's" branches have been paid similar rates in a similar manner at any given point in time.

88.     Mr. Flores should have been paid an average of approximately \$614.63 (\$8.25 × 40 + \$8.25 × 1.5 × 23) for each week that he worked for defendants. Instead, defendants paid Mr. Flores an average of only approximately \$378.00 per week (\$6.00 X 63 Hours) for approximately October 2010 – February 2010, and an average of only approximately \$519.75 per week (\$8.25 × 63) for approximately October 2010 – July 2013.

89.     Defendants owe Mr. Flores approximately \$24,009.75 in minimum and overtime wages.

90.     At all times that Mr. Flores worked at the "Park View / Petworth Park" location,  he worked alongside approximately 5–7 other cook/cashiers and approximately 7–9 drivers at any given time. During the entirety of his time working at the "Park View / Petworth Park" location, he worked alongside approximately 10–14 different cook/cashiers and approximately 14–18 different drivers.

91.     All of the cook/cashiers at the "Park View / Petworth Park" location were paid a similar rate to Mr. Flores's (\$6.00, and later \$8.00 –\$9.00), and all of drivers at the "Park View / Petworth Park" location were paid \$4.00 per hour. Everyone was paid the same rate across all of their hours.

92.     At all times that Mr. Flores worked at the "14th Street" location, he worked alongside approximately 5–7 other cook/cashiers and approximately 7–9 drivers at any given time. During

the entirety of his time working at the "14th Street" location, he worked alongside approximately 7–9 different cook/cashiers and approximately 9–11 different drivers.

93.     All of the cook/cashiers at the "14th Street" location were paid a similar rate to Mr. Flores's ($8.00–$9.00), and all of the drivers at the "14th Street" location were paid $4.00 per hour. Everyone was paid the same rate across all of their hours.

94.     At all times that Mr. Flores worked at the "H Street" location, he worked alongside approximately 3–5 other cook/cashiers and approximately 4–6 drivers at any given time. During the entirety of his time working at the "H Street" location, he worked alongside approximately 5–7 different cook/cashiers and approximately 7–9 different drivers.

95.     All of the cook/cashiers at the "H Street" location were paid a similar rate to Mr. Flores's ($8.00–$9.00), and all of the drivers at the "H Street" location were paid $4.00 per hour. Everyone was paid the same rate across all of their hours.

96.     At each of the Manny & Olga's locations at which Mr. Flores worked, he never saw or received any posting or notice of his right to be paid minimum wage or overtime, nor was he told that he had the right to receive minimum wage and overtime.

97.     The checks that Mr. Flores and his fellow employees received variously bore the entity names: "Manny and Olgas [*sic*] Pizza Georgetown"; "Manny and Olgas [*sic*] Pizza Inc."; "Manny & Olga's"; and "3624 Georgia Ave Inc [*sic*]". Changes in the entity name on the checks did not correspond to any change in job location or job duties.

98.     At all relevant times, the District of Columbia business license for the "Park View / Petworth Park" location was in the name of defendant Haralambos Athanasakis (an alias of Bobby Athanasakis). No corporation was licensed to do business at that address.

99.    At all relevant times, The District of Columbia business license for the "14th Street" location was in the name of Defendant Emmanuel "Manny" Athanasakis. No corporation was licensed to do business at that address.

**Plaintiff Cristina Arroyo**

100.    Plaintiff Cristina Arroyo worked for defendants at the "14th Street" "Manny Olga's (1841 14th Street NW; Washington DC 20009) for approximately 7.5 years, from approximately February 2006 to approximately August 2013.

101.    Throughout her 7.5 years at the "14th Street" location, Ms. Arroyo had many supervisors, but Bobby Athanasakis and Emmanuel Athanasakis were always the "bosses." Bobby would come in 4–5 days a week and give orders to the employees. Both Bobby and Ms. Arroyo's supervisors made it clear that restaurant policy was set by Bobby in consultation with his father. In addition, Bobby was often the one that calculated the employees' pay and handed them their wages.

102.    Throughout Ms. Arroyo's employment, Bobby's wife, Eleni Athanasakis, and Bobby's father, Emmanuel Athanasakis, would also occasionally come to the various Manny & Olga's restaurants and give the employees direct orders. Over the years, Emmanuel Athanasakis came by less frequently, and Eleni Athanasakis came by more frequently.

103.    Throughout Ms. Arroyo's employment, she was always a driver.

104.    Throughout Ms. Arroyo's employment, with the exception of January 2012 – November 2012, she typically worked approximately 62–68 hours a week. She worked approximately 10.5-11.5 hours per day for 4 out of the 5 days between Sunday and Thursday, and approximately 11.5–12.5 hours on both Friday and Saturday. She usually had one day off a week, which would occur between Sunday and Thursday, although she sometimes worked 7 days in a week.

105.     Throughout Ms. Arroyo's employment, all drivers worked the same typical schedule: approximately 62–68 hours a week, approximately 10.5–11.5 hours per day for 4 out of the 5 days between Sunday and Thursday;  approximately 11.5–12.5 hours on both Friday and Saturday;  and one day off a week between Sunday and Thursday, although they sometimes worked 7 days in a week.

106.     Throughout Ms. Arroyo's employment, all cook/cashiers worked the same schedule. Their daily schedule was slightly shorter than that of the drivers, because the kitchen was sometimes closed by the time the drivers returned from their deliveries. They typically worked approximately 60–66 hours a week, approximately 10–11 hours per day for 4 out of the 5 days between Sunday and Thursday;  approximately 11–12 hours on both Friday and Saturday;  and one day off a week between Sunday and Thursday, although they sometimes worked 7 days in a week.

107.     Throughout her employment, Ms. Arroyo was paid $4.00 per hour for each hour worked, plus a small daily "bonus" based on the dollar amount of deliveries completed. On information and belief, this "bonus" usually worked out to approximately $2.00 per hour.

108.     Ms. Arroyo was paid exclusively in cash. She never received a paystub.

109.     Ms. Arroyo should have been paid an average of approximately $639.98 ($8.25 × 40 + $8.25 × 1.5 × 25) for each week that she worked for defendants. Instead, defendants paid Ms. Arroyo an average of only approximately $249.38 per week ($4.00 wage + $2.00 "bonus" = $6.00 × 63 Hours).

110.     Defendants owe Ms. Arroyo approximately $36,907.50 in minimum and overtime wages.

111.     At all times that Ms. Arroyo worked at the "14th Street" location, she worked alongside approximately 7–9 other drivers and approximately 5–7 cook/cashiers at any given time. During

18

the entirety of her time working at the "14th Street" location, she worked alongside approximately 10–20 different cook/cashiers and approximately 10–20 different drivers.

112.    Throughout Ms. Arroyo's 7.5 years of employment, all of the drivers at the "14th Street" location were paid $4.00 per hour, plus a small daily bonus.

113.     Throughout Ms. Arroyo's 7.5 years of employment, she never saw or received any posting or notice of her right to be paid minimum wage or overtime, nor was she told that she had the right to receive minimum wage and overtime.

### COUNT I
### FAILURE TO PAY MINMUM AND OVERTIME WAGES UNDER THE FLSA
### (29 U.S.C. § 201 *et seq.*)

114.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

115.    Plaintiffs and similarly situated individuals were "employees" of defendants within the meaning the FLSA, 29 U.S.C. § 203(e)(1).

116.    Plaintiffs and similarly situated individuals were "non-exempt" employees of defendants within the meaning of the FLSA, 29 U.S.C. § 213.

117.    Defendants were "employers" of plaintiffs and similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 203(d).

118.    The FLSA requires employers to pay non-exempt employees a minimum wage equal to an amount set by Congress. 29 U.S.C. § 206(a)(1).

119.    The FLSA permits states to set a minimum wage higher than that provided for by the FLSA. 29 U.S.C. § 218.

120.    The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. § 207(a)(1).

121.     Defendants violated the FLSA by knowingly failing to pay plaintiffs and similarly situated individuals the federal minimum wage for all hours worked.

122.     Defendants violated the FLSA by knowingly failing to pay plaintiffs and similarly situated individuals one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

123.     Defendants' violations of the FLSA were willful.

124.     For their violations of the FLSA, defendants are liable to plaintiffs and similarly situated individuals for unpaid minimum and overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

### COUNT II
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA
### (D.C. Code § 32-1001 *et seq*.)

125.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

126.     Plaintiffs and similarly situated individuals spent more than 50% of their working time in a given period in the District of Columbia.

127.     Plaintiffs and similarly situated individuals were "employees" of defendants within the meaning of the DCMWA, D.C. Code § 32-1002(2).

128.     Plaintiff and similarly situated individuals were "non-exempt" employees of defendants within the meaning of the DCMWA, D.C. Code § 32-1004.

129.     Defendants were "employers" of plaintiffs and a similarly situated individuals within the meaning of the DCMWA, D.C. Code § 32-1002(3).

130.     The DCMWA requires employers to pay non-exempt employees a minimum wage one dollar higher than the federal minimum wage. D.C. Code § 32-1003(a).

131.    The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code § 32-1003(c).

132.    Defendants violated the DCMWA by knowingly failing to pay plaintiffs and similarly situated individuals the District of Columbia minimum wage for all hours worked.

133.    Defendants violated the DCMWA by knowingly failing to pay plaintiffs and similarly situated individuals one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

134.    Defendants' violations of the DCMWA were willful.

135.    For their violations of the DCMWA, defendants are liable to plaintiffs and similarly situated individuals for unpaid minimum and overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court enter judgment against all defendants, jointly and severally, in plaintiffs' favor on all counts, and grant the following relief:

a.      Award plaintiffs and all similarly situated individuals:  unpaid minimum and overtime wages, and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216;

b.      Award plaintiffs and all similarly situated individuals who spent more than 50% of their working time in a given period in the District of Columbia: unpaid minimum and overtime wages, and an equal amount as liquidated damages, pursuant to D.C. Code § 32-1012;

    c.       Award plaintiffs their reasonable attorneys' fees and expenses and court costs;

    d.       Award plaintiffs pre-judgment and post-judgment interest as allowed by law; and

    e.       Any additional relief the Court deems just.


Date: May 22, 2014                        Respectfully submitted,

                                         /s/Justin Zelikovitz
                                       Justin Zelikovitz (#986001)
                                       Law Office of Justin Zelikovitz PLLC
                                       519 H Street, Second Floor
                                       Washington, DC 20001
                                       T: (202) 803-6083
                                       F: (202) 683-6102
                                       justin@dcwagelaw.com

                                       *Counsel for Plaintiffs*